Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6410 | **DATE** | 12/13/2004 |
| **CASE TITLE** | Vernice M. Dixon vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's Rule 59(e) motion to alter or amend judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | DEC 1 4 2004 date docketed | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | | 36 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | 12/13/2004 | |
| | Copy to judge/magistrate judge. | 2004 DEC 13 PM 3:56 | date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERNICE M. DIXON, | ) |
| | ) |
| Plaintiff, | ) Case No. 02 C 6410 |
| | ) |
| v. | ) Magistrate Judge |
| | ) Martin C. Ashman |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

DOCKETED
DEC 1 4 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Vernice M. Dixon, moves this Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend its order of March 23, 2004. Defendant, the Commissioner of the Social Security Administration ("Commissioner"), opposes Plaintiff's motion. After careful consideration of the parties' contentions, this Court denies Plaintiff's motion to alter or amend judgment and affirms the Commissioner's decision.

### I. Background

On September 30, 1999, Plaintiff applied for Supplemental Security Income ("SSI") disability benefits, alleging disability due to a hand injury, as well as depression and seizures. (R. at 90-92.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 62, 67.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on June 15, 2000. (R. at 70.) The hearing was held before ALJ Cynthia M. Bretthauer on September 11, 2000. (R. at 15.) On December 27, 2000, the ALJ rendered her decision and found Plaintiff not

disabled because she could perform a significant number of jobs in the national economy. (R. at 20.) Plaintiff filed a timely appeal, but the Appeals Council denied her request for review. (R. at 6-7.)

Plaintiff commenced a civil action before this Court pursuant to 42 U.S.C. § 405(g), seeking reversal or remand of the ALJ's denial of her claim for disability benefits. Plaintiff alleged two primary grounds for reversal or remand in her motion for summary judgment. First, Plaintiff argued that the ALJ erred when she determined Plaintiff's Residual Functional Capacity ("RFC") because the ALJ failed to give proper consideration to certain physical and mental factors. Specifically, Plaintiff claimed that the ALJ failed to state logical reasons for rejecting certain medical evidence of Plaintiff's physical impairments, the ALJ failed to address Plaintiff's obesity, and the ALJ failed to perform a proper mental RFC assessment. Second, Plaintiff argued that the ALJ incorrectly disregarded Plaintiff's testimony about her impairments when the ALJ determined that Plaintiff's testimony lacked credibility. On March 23, 2004, this Court upheld the Commissioner's denial of benefits. *See Dixon v. Barnhart*, No. 02 C 6410, 2004 WL 603492, at *18 (N.D. Ill. Mar. 23, 2004).

Plaintiff now asks this Court to reconsider its order of March 23, 2004. Plaintiff contends that this Court: 1) failed to recognize that objective medical evidence supports Plaintiff's complaints of headaches, and 2) failed to apply current Seventh Circuit law regarding pain in the disability determination, activities of daily living in the credibility determination, and proper hypotheticals regarding mental impairments. (Pl.'s Mot. at 2.)

## II. Discussion

Rule 59(e) permits parties to file, within ten days of the entry of a judgment, a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e). A Rule 59(e) motion is properly granted if there has been a mistake of law or fact. *See Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1180 (7th Cir. 1992). The rule allows the district court to "correct is own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). A Rule 59(e) motion to reconsider does not give a disappointed party the opportunity to rehash the same arguments that it raised earlier or to present new arguments. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). The motion for reconsideration is appropriate when:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In Social Security disability benefits cases, this Court determines whether the record as a whole contains substantial evidence to support the ALJ's final decision and whether the ALJ committed an error of law. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Evidence is considered substantial if a reasonable person would accept it as adequate to support the ALJ's conclusion. *Id.* Substantial evidence is more than a mere scintilla of evidence, but it may be something less than the preponderance of the evidence. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). Furthermore, if reasonable minds could disagree on whether Plaintiff is disabled, this Court will affirm the ALJ's decision. *See Schmidt v. Apfel*, 201

F.3d 970, 972 (7th Cir. 2000). It is improper for this Court to reweigh evidence, decide facts anew, or substitute our judgment for that of the ALJ's. *Young*, 362 F.3d at 1001. This Court should not, however, act as an "uncritical rubber stamp." *See Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986). Rather, we examine the evidence favoring a finding of a disability as well as rejection of a disability and consider whatever in the record "fairly detracts" from the weight given to each. *Id.*

### A.    Plaintiff's Motion Was Timely Filed.

Plaintiff's 59(e) motion was timely filed. Plaintiff needed to file her motion within ten days (not including weekends or holidays) of the entry of judgment. Fed. R. Civ. P. 59(e). This case was decided on March 22, 2004, but the decision was not entered into the public docket until March 23, 2004. A judgment is effective only when set forth as a separate document and entered on the docket. *Harold Washington Party v. Cook County, Illinois Democratic Party*, 984 F.2d 875, 878 n. 4 (7th Cir. 1993); Fed. R. Civ. P. 58(a)-(b) & 79(a). Thus, Plaintiff had ten business days beginning on March 23, 2004, in which to file her motion. Plaintiff filed her motion on April 6, 2004, the tenth business day.

### B.    Plaintiff's Complaints Were Addressed in Our Original Decision.

The Court carefully reviewed Plaintiff's grievances in our previous decision. Because the Court finds that Plaintiff's grievances were properly considered and decided in the previous decision, the Court denies Plaintiff's 59(e) motion to alter or amend the previous decision.

1.  The Court properly assessed objective medical evidence
    of Plaintiff's headaches.

Plaintiff first claims that this Court and the ALJ failed to properly assess medical evidence supporting her complaints of headaches. Plaintiff argues that the objective medical evidence supports her complaints of severe headaches. In particular, Plaintiff notes that: Dr. Lewis diagnosed Plaintiff with a variation on migraine headaches (R. at 310); Dr. Gulati, who administered a complete and thorough examination, treated Plaintiff for migraine headaches and believed that Plaintiff's seizures and eye hemorrhage were related to her migraine headaches (R. at 218); Dr. Desai diagnosed Plaintiff with, and treated her for, migraine headaches (R. at 276-78); Plaintiff was prescribed Elavil, Depakote, Imitrex and Butalbital for her headaches (R. at 214, 278, 289-90); and Plaintiff's CT scan and EEG tests were both abnormal. (R. at 215-16, 276-77; Pl.'s Mem. Supp. Mot. at 1-5.) Plaintiff argues that her headaches are established by medical evidence and that they prevent her from engaging in significant gainful activity. (Pl.'s Mem. Supp. Mot. at 5.)

Both this Court and the ALJ accepted that Plaintiff suffers from headaches and that some of Plaintiff's complaints of headaches are supported by objective medical evidence. However, as discussed in our decision, neither this Court nor the ALJ found that Plaintiff's headaches prevent her from working. *Dixon*, 2004 WL 603492, at *16-17. Plaintiff herself testified that she was only prevented from working when she experienced "real bad" headaches. (R. at 18, 35.) While Plaintiff claimed that her "real bad" headaches occur once a week and last for hours or days, (R. at 36), this testimony was found to be not credible. (R. at 18.) Neither the frequency nor the duration of the "real bad" headaches was supported by medical evidence, causing this Court to

state, "the record contains no clear support for Plaintiff's claims." *Dixon*, 2004 WL 603492, at *16. The ALJ found it significant that: Plaintiff had never been to the emergency room for a "real bad" headache, (R. at 18); Plaintiff's treating physician, whom Plaintiff argues is a controlling authority on her headaches, noted no significant reduction in Plaintiff's ability to sit, stand, walk, or perform physical activities of daily living, (R. at 18, 121); and Dr. Desai, the neurologist who examined Plaintiff in August 2000, found that Plaintiff's headaches could be controlled with medicine. (R. at 18.) Thus, objective evidence supported Plaintiff's general claims of headaches, but did not support Plaintiff's claims of frequent debilitating headaches that prevent her from performing basic work activities. The Court went on to find that this record justified the ALJ's decision to grant less credit to Plaintiff's statements concerning headaches. *Dixon*, 2004 WL 603492, at *16.

Plaintiff claims that, "[u]nder the heading of 'HA' or headaches, Dr. Gulati noted that [Plaintiff's] headaches were 'frequent,' occurring at least one a week, and that sometimes Tylenol helped, but other times nothing helped." (Pl.'s Mem. Supp. Mot. at 3.) Dr. Gulati's report in fact describes Plaintiff's headaches as occurring "once - wk or longer." (R. at 218.) The Court finds that "once - wk or longer" does not mean "at least one a week." Rather, Dr. Gulati's notation appears to suggest that the severe headaches occurred less than once a week and that Tylenol often alleviated Plaintiff's pain. This is consistent with the ALJ's findings. In short, Plaintiff's counter-intuitive interpretation of Dr. Gulati's report does not persuade the Court to alter or amend our decision in this case.

Plaintiff also claims that this Court's finding conflicts with the ALJ's finding because the ALJ found Plaintiff's headaches to be a severe impairment. (Pl.'s Mem. Supp. Mot. at 2.)

-6-

Plaintiff misstates the ALJ's findings. The ALJ found that Plaintiff has "severe headaches," (R. at 19), not that "Plaintiff's headaches were a severe impairment." (Pl.'s Mem. Supp. Mot. at 2.) It is true that in order to move beyond step two of her five-step inquiry into Plaintiff's disability the ALJ needed to conclude that Plaintiff's impairment was severe. However, this step two requirement may be satisfied by either (1) a severe medically determinable physical or mental impairment or by (2) a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). In this case, the ALJ did not identify one specific severe medically determinable impairment. Instead, the ALJ stated that, "[Plaintiff] has severe headaches, a seizure disorder, history of right upper extremity laceration, and depression," (R. at 19), thereby indicating that step two of the inquiry was satisfied by a combination of impairments. Because the ALJ did not find Plaintiff's severe headaches to be a severe impairment, there is no conflict between the Court's finding and the ALJ's finding.

2. <u>The Court properly assessed Dr. Miller's medical findings.</u>

Plaintiff suggests that the Court relied on post-hoc arguments when we found that the ALJ logically relied on Drs. Gordon and Miller because (1) those doctors examined Plaintiff years after Dr. Radowitz, and (2) Dr. Miller's conclusions were not inconsistent with other medical evidence. According to Plaintiff, Dr. Radowitz's 1998 examination was entitled to more weight than Dr. Miller's examination because Dr. Miller was treating Plaintiff for headaches and mental issues, but not for pain in her hands. (Pl.'s Mem. Supp. Mot. at 6.) Plaintiff further argues that Dr. Miller's report should not be construed as evidence supporting the ALJ's analysis of Plaintiff's hand because (1) there is no indication that Dr. Miller performed a comprehensive

examination of Plaintiff's hand, and (2) Dr. Miller's conclusions were inconsistent with the previous findings of Drs. Radowitz and Gordon. (Id.) Plaintiff concludes that we must remand this case so that the ALJ can explain why she chose to rely on Drs. Gordon and Miller but not Dr. Radowitz. (Pl.'s Mem. Supp. Mot. at 8.)

Plaintiff suggests that this Court resorted to post-hoc arguments when we found that the ALJ logically found medical exams performed in the same year as the ALJ hearing more significant than identical medical exams performed two years earlier. The Court disagrees with Plaintiff's interpretation of our decision. In our original decision, this Court explained why we felt the ALJ properly weighed and considered all of the medical evidence available to her. We found that the ALJ logically relied on the most recent examinations, but that the ALJ had clearly incorporated other examinations into her findings and especially into Plaintiff's RFC. *Dixon*, 2004 WL 603492, at *11. We also addressed Plaintiff's concerns that Dr. Miller was not as knowledgeable about Plaintiff's hand impairment as Drs. Gordon or Radowitz. *Id.* In short, the Court was able to track the ALJ's reasoning and find a logical and accurate bridge connecting substantial evidence to the ALJ's final decision. There was no need for post-hoc arguments to justify or explain the ALJ's analysis and none were employed.

Furthermore, it was not improper to characterize Dr. Miller's observations as consistent with other medical evidence. Dr. Miller's assessment suggested that Plaintiff had difficulty with pushing and pulling. (R. at 121.) Dr. Miller did not report problems with Plaintiff's finger dexterity, but Dr. Gordon's reports three months earlier had reflected marked improvements in Plaintiff's finger dexterity since 1998. (R. at 225.) Thus, in accordance with our decision, the Court continues to hold that Dr. Miller's findings were "perhaps slightly more optimistic than

- 8 -

either Dr. Gordon's or Dr. Radowitz's" and "not inconsistent with other medical evidence." *Dixon*, 2004 WL 603492, at *11. To the extent Plaintiff seeks to discredit Dr. Miller's findings with Dr. Radowitz's 1998 examination, the Court rejects Plaintiff's argument and refers her to our discussion of these examinations in our original decision. *See id.*

The Court sees no need to reassess the weight given to the various medical examinations. Plaintiff's concerns about Dr. Miller's examination have already been addressed. The Court addressed the ALJ's analysis of Drs. Radowitz, Gordon and Miller's examinations and explained why we are confident that the ALJ's treatment was proper. *Id.* at *10-11. The Court found that the ALJ primarily relied on Dr. Gordon's assessment, not Dr. Miller's, thereby giving primary weight to the physician who analyzed her hands. For example, the ALJ cites Dr. Gordon's tests of Plaintiff's hands in her analysis and not Dr. Miller, despite the fact that Dr. Miller gave high marks on Plaintiff's finger dexterity. (R. at 18.) And as discussed in our original opinion, Plaintiff's RFC includes several limitations on the use of her hand, reflecting the fact that Dr. Miller's examination was not taken entirely at face-value. *Dixon*, 2004 WL 603492, at *11.

Plaintiff, citing to a form that she completed when she requested a disability hearing, (R. at 165), claims that Dr. Miller was only treating her for headaches so his hand evaluation should not be given much weight. (Pl.'s Mem. Supp. Mot. at 6.) This form does not convince the Court that Dr. Miller failed to assess Plaintiff's capabilities before completing his report on incapacity. As noted in our original opinion, Dr. Miller answered specific questions about Plaintiff's hand. *Dixon*, 2004 WL 603492, at *11. Dr. Miller graded Plaintiff's finger manipulation, grasping manipulation, fine manipulations, and Plaintiff's ability to push, pull, and repeatedly lift weight during an eight hour work day. (R. at 121.) While Dr. Miller may not have

- 9 -

performed in-depth testing of Plaintiff's hand, his answers were undoubtedly based on observations or examinations of some kind. Thus, Dr. Miller's examination of Plaintiff's hand cannot simply be dismissed as cursory or uninformed.

### 3. The Court properly assessed Plaintiff's complaints of pain.

Plaintiff argues that her complaints of pain in her hand must be reassessed. Plaintiff states that, in light of *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004), complaints of debilitating pain alone support a finding of disability. (Pl.'s Mem. Supp. Mot. at 8-10.) Plaintiff complains of constant pain in her right hand and points out that several doctors noted this pain when Plaintiff performed grip tests. (Id.) Plaintiff argues that this pain may prevent her from performing substantial gainful activity in general and several of the jobs recommended by the Vocational Expert ("VE") in particular. (Pl.'s Mem. Supp. Mot. at 11.) Plaintiff also claims that it is unclear why the ALJ included some of Plaintiff's complaints of pain in her RFC but not all of them. (Id.) And finally, Plaintiff claims that, after *Carradine*, it was improper for the ALJ to consider Plaintiff's ability to perform activities of daily living when assessing Plaintiff's credibility. (Pl.'s Mem. Supp. Mot. at 12.)

Plaintiff relies heavily on *Carradine*. In *Carradine*, the ALJ rejected the claimant's complaints of debilitating pain because the claimant's severe pain was primarily psychological in origin and because the claimant was capable of performing several routine daily activities. 360 F.3d at 754-55. The Seventh Circuit rejected the ALJ's credibility determination because of errors in reasoning. *Id.* at 754. Specifically, the *Carradine* Court found that pain may be completely debilitating even in the absence of physical medical evidence and that a claimant's

ability to perform some routine daily activities does not prove that the claimant can work eight hours a day five days a week. *Id.* at 754-55. The *Carradine* decision does not change the analysis or outcome of this case. In this case, the ALJ properly assessed Plaintiff's complaints of pain, including which activities cause Plaintiff pain and which pain killers are effective and under what circumstances. (R. at 17-19.) In fact, Plaintiff's RFC includes several limitations based on her own testimony about pain (effects of rain, cold, repetitive gripping, pushing and pulling). (Id.) In short, the Court has already evaluated the objective medical evidence, Plaintiff's testimony, and the ALJ's decision to not fully credit Plaintiff's complaint of constant pain, and the Court has determined that the ALJ properly assessed Plaintiff's complaints of pain. *Dixon*, 2004 WL 603492, at *17.

The ALJ's decision to credit Plaintiff's complaints of pain when they did not conflict with medical evidence or Plaintiff's own testimony made sense. Plaintiff complained that exposure to the elements reduces the effectiveness of the pain medication she takes for her hand, (R. at 36), so the ALJ included related limitations in Plaintiff's RFC. (R. at 18.) Plaintiff's medical records showed that Plaintiff was able to perform some hand manipulation without pain and that was included Plaintiff's RFC. (Id.) Thus, where Plaintiff's testimony did not conflict with medical evidence or with her own testimony, the ALJ appears to have credited Plaintiff's complaints and incorporated the complaints into Plaintiff's RFC. In light of the ALJ's decision to not fully credit Plaintiff's complaints, this assessment makes sense and does not require further explanation by the ALJ.

Finally, the ALJ did not err when she considered Plaintiff's ability to perform daily activities. Plaintiff's ability to perform daily activities may not be sufficient to disprove

allegations of pain but it is still relevant to the ALJ's assessment of Plaintiff's credibility and Plaintiff's ability to perform work. *See Davis v. Barnhart*, 187 F. Supp. 2d 1050, 1057-58 (N.D. Ill. 2002).

### 4. The Court properly considered Plaintiff's mental deterioration.

Plaintiff seizes on the theory that Plaintiff has experienced marked deterioration over the years and can no longer function as well as her medical evidence suggests. To support this theory Plaintiff suggests that it has been years since her ability to function on her own was truly assessed and she stresses the fact that she met with a psychiatrist for the first time shortly after the ALJ hearing. (Pl.'s Mem. Supp. Mot. at 12-13.) Plaintiff argues that we must remand this case in order to properly consider whether daily activities conflict with Plaintiff's allegations of disability. (Id.)

The ALJ assessed Plaintiff's mental health and relied heavily on Dr. Hermsmeyer. Dr. Hermsmeyer's evaluation, and the ALJ's decision to rely upon it, are discussed in depth in our previous decision. *Dixon*, 2004 WL 603492, at *13-14, 17. Considering that Dr. Hermsmeyer's evaluation took place in March 2000, (R. at 251), only six months before the administrative hearing, the Court's decision that it was reasonable for the ALJ to rely on those mental evaluations stands. Furthermore, as noted in our decision, it is not obvious that Plaintiff's scheduled meeting with a psychiatrist to discuss her possible depression has any impact on Plaintiff's ability to perform basic work activities. *Dixon*, 2004 WL 603492, at *17-18. Accordingly, the Court does not reconsider alter or amend our previous decision based Plaintiff's scheduled meeting with a psychiatrist.

Plaintiff also argues that the ALJ failed to apply the "special technique" for assessing mental impairments set out in 20 C.F.R. 416.920a(a)-(e). The Court disagrees. In her opinion, the ALJ assessed the medical evidence regarding mental impairment and rated Plaintiff's degree of limitation in the four broad functional areas set out in 416.920a(b)-(c). (R. at 18.)

5. The ALJ did not rely on a conclusory or otherwise improper hypothetical.

Plaintiff argues that the hypothetical posed to the VE was flawed because it did not mention Plaintiff's alleged mental deterioration. (Pl.'s Mem. Supp. Mot. at 12.) Plaintiff also alleges that the ALJ's hypothetical was conclusory and stated the types of jobs, namely "simple and routine," that Plaintiff can perform. (Pl.'s Mem. Supp. Mot. at 13.) Finally, Plaintiff considers the hypothetical flawed because it did not include Plaintiff's headaches or inability to do work on a consistent basis. (Pl.'s Mem. Supp. Mot. at 14.)

The ALJ did not err when she excluded both alleged mental deterioration and headaches from her hypothetical. As stated above, the Court finds that the ALJ accurately assessed Plaintiff's mental capacity, as well as Plaintiff's complaints of severe headaches. Accordingly, the Court supports the ALJ's decision to exclude mental deterioration and severe headaches from Plaintiff's RFC.[1]

The Court does not consider the "simple and routine" language in the hypothetical to be conclusory. The ALJ used "simple and routine" as an additional restriction on the types of work

---

[1] Having found that the ALJ properly assessed Plaintiff's RFC, the Court rejects Plaintiff's attempt to compare the ALJ's findings to *Lechner v. Barnhart*, where the ALJ "offered no explanation for and cited no medical evidence supporting her RFC assessment." 321 F. Supp. 2d 1015, 1036 (E.D. Wis. 2004).

that Plaintiff can perform, not as a class of work that Plaintiff is qualified to perform. (R. at 48.) More importantly, the ALJ and the VE discussed the meaning and context of simple jobs and simple tasks at the hearing, such that the VE had a full understanding of Plaintiff's limitations when answering the ALJ's hypothetical. (R. at 51-52.) A hypothetical need not include every piece of evidence so long as the hypothetical is supported by the medical record and the VE had full knowledge of Plaintiff's limitations. *Young*, 362 F.3d at 1003. The hypothetical in this case meets those standards and constitutes substantial evidence upon which the ALJ may rely.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's Rule 59(e) motion to alter or amend judgment.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: December 13, 2004.

Copies have been mailed to:

| | |
|---|---|
| FREDERICK J. DALEY, JR., Esq.<br>MARK D. DeBOFSKY, Esq.<br>Daley, DeBofsky & Bryant<br>1 North LaSalle Street<br>Suite 3800<br>Chicago, IL 60602<br><br>Attorneys for Plaintiff | KATHRYN BEVERLY, Esq.<br>Special Assistant United States Attorney<br>200 West Adams Street<br>30th Floor<br>Chicago, IL 60606<br><br>Attorney for Defendant |